IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

vs.

PATRELLE JOSE GREEN-BOWMAN,

　　　　　Defendant.

No. 13-CR-2023-LRR

**ORDER**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2*
*II. RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . 2*
*III. RELEVANT TRIAL EVIDENCE.. . . . . . . . . . . . . . . . . . . . . . . . . 3*
*IV. MOTION FOR JUDGMENT OF ACQUITTAL. . . . . . . . . . . . . . . . . 4*
　　*A. Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4*
　　*B. Analysis.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5*
　　　　*1.　Knowing possession.. . . . . . . . . . . . . . . . . . . . . . . . . 5*
　　　　*2.　Knowledge that gun had barrel of less than eighteen inches. . . 7*
*V. MOTION FOR NEW TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8*
　　*A. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8*
　　*B. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9*
　　　　*1.　Weight of the evidence.. . . . . . . . . . . . . . . . . . . . . . . 10*
　　　　*2.　Prior firearm conviction.. . . . . . . . . . . . . . . . . . . . . . 10*
　　　　*3.　Recalcitrant witness.. . . . . . . . . . . . . . . . . . . . . . . . 11*
　　　　　　*a.　Parties' arguments. . . . . . . . . . . . . . . . . . . . . 11*
　　　　　　*b.　Applicable law. . . . . . . . . . . . . . . . . . . . . . . 12*
　　　　　　*c.　Application. . . . . . . . . . . . . . . . . . . . . . . . . 14*
　　　　　　　　*(i)　Grand jury testimony. . . . . . . . . . . 14*
　　　　　　　　*(ii)　Hearsay.. . . . . . . . . . . . . . . . . . . . 15*
　　　　　　　　*(iii)　Unfair prejudice. . . . . . . . . . . . . . 16*

                    *(iv)*    *Plain error*. . . . . . . . . . . . . . . . . 18

VI.   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

The matter before the court is Defendant Patrelle Jose Green-Bowman's "Motion for Judgment of Acquittal and Motion for New Trial" ("Motion") (docket no. 80).

## II. RELEVANT PROCEDURAL HISTORY

On October 9, 2013, the grand jury returned a two-count Superseding Indictment (docket no. 6) against Defendant. Count 1 charged Defendant with knowingly possessing a firearm after having been previously convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count 2 charged Defendant with knowingly possessing a shotgun with a barrel of less than 18 inches that was not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5845(a), 5861(d) and 5871. The Superseding Indictment also included a forfeiture allegation.

On December 30, 2013, a jury trial commenced on Counts 1 and 2 of the Superseding Indictment. On December 30, 2013, at the close of the government's evidence and after Defendant represented to the court that he did not intend to present evidence, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the court denied. December 30, 2013 Minute Entry (docket no. 65). On December 31, 2013, the jury returned guilty verdicts on Counts 1 and 2 of the Superseding Indictment. Jury Verdicts (docket no. 74).

On January 14, 2014, Defendant filed the Motion, in which Defendant "requests that the court grant [his] motion for judgment of acquittal on the grounds that the government failed to present sufficient evidence to establish all of the elements of the crimes charged beyond a reasonable doubt." Motion at 1. Defendant also "conditionally and alternatively requests that the court grant him a new trial in the interest of justice on

the ground that the jury verdict[s] [were] against the weight of the evidence." *Id*. On January 24, 2014, the government filed a Resistance (docket no. 84) to the Motion, arguing that there is sufficient evidence to sustain the jury's verdicts and that the verdicts did not go against the weight of the evidence. Defendant did not file a reply, and the time for doing so has expired. *See* LR 7(g). The Motion is fully submitted and ready for decision.

### III. RELEVANT TRIAL EVIDENCE[1]

Viewed in the light most favorable to the government, the trial evidence showed that on August 2, 2013, officers from the Waterloo, Iowa police department were on foot patrol near Conger Street and Logan Avenue in Waterloo. The officers approached two vehicles, and the people near the vehicles appeared to be attempting to jump start one of the vehicles. As the officers approached the vehicles, they noticed that Defendant was talking on the phone while sitting in the back seat of one of the cars on the passenger side. Defendant was the only person sitting inside that vehicle, and when officers walked up to Defendant, he immediately stood up and walked away from the vehicle without saying anything to the officers.

The officers walked around the vehicle in which Defendant had been sitting, shined a flashlight into the back seat and noticed the handle of a shotgun protruding from underneath Defendant's Chicago Cubs coat. The shotgun was partially wrapped in the coat and had a sawed-off barrel measuring less than 18 inches in length.

The government also presented evidence of Defendant's prior acts pursuant to Federal Rule of Evidence 404(b) to show that Defendant was convicted of carrying weapons in Blackhawk County in 2011.

---

[1] When relevant, the court relies on and discusses additional facts in conjunction with its analysis of the law.

3

Finally, the government called Eric Webster and Clay Gilmer, two witnesses who were present at the scene where the gun was found. Webster refused to testify, and the court held him in civil contempt. *See* December 30, 2013 Minute Entry at 1. Gilmer testified that he did not remember most of the details from the events of August 2, 2013. In response to this testimony, the government impeached Gilmer with his prior statements before the grand jury.

## IV. *MOTION FOR JUDGMENT OF ACQUITTAL*

### A. *Legal Standard*

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It is well-settled that jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt. *Id.* Moreover, the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses—that task is for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

## B. Analysis

In the Motion, Defendant argues that the government did not present sufficient evidence to support the jury's verdicts. Specifically, Defendant contends that the government did not offer sufficient evidence for a reasonable jury to conclude that he knowingly possessed the gun or that he knew that the gun had a barrel of less than eighteen inches. Defendant also contends that the government did not present sufficient evidence for a reasonable jury to conclude that Defendant knew that the barrel of the gun was less than eighteen inches.

### 1. *Knowing possession*

Defendant contends that the government did not offer sufficient evidence for a reasonable jury to conclude "that the gun was placed [under the coat] by Defendant or that Defendant had the intention to exercise dominion and control over the gun to the exclusion of the other people at the scene." Brief in Support of the Motion (docket no. 80-1) at 6. Defendant argues that because the government did not present evidence of who placed the gun in the car, the government must "provide evidence that could preclude" the possibility "that another individual could have placed [Defendant's jacket] onto [the] gun." *Id.* at 5. In response, the government argues that "the evidence was sufficient to demonstrate [D]efendant's knowledge of, and control over, the sawed-off shotgun." Brief in Support of Resistance (docket no. 84-1) at 9. The government points to the location of the shotgun, the fact that the shotgun was wrapped in Defendant's coat and Defendant's actions upon being confronted by police as being sufficient to allow the jury to conclude that Defendant possessed the shotgun.

To convict Defendant of being a felon in possession of a firearm, the government was required to prove that: "(1) [Defendant] had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) [Defendant] knowingly possessed a firearm . . . ; and (3) the firearm . . . had been in, or had affected, interstate

5

commerce." *United States v. Daniels*, 625 F.3d 529, 532-33 (8th Cir. 2010). The government and Defendant stipulated that Defendant had previously been convicted of a felony and that the firearm had been in or had affected interstate commerce. *See* Government Exhibit 11 (docket no. 65-8) and Government Exhibit 12 (docket no. 65-9). Because of these stipulations, the government only needed to prove that Defendant knowingly possessed the shotgun.

> "Possession can be actual or constructive. Actual possession is the knowing, direct, and physical control over a thing." *United States v. Serrano–Lopez*, 366 F.3d 628, 634 (8th Cir.2004) (citation omitted). "Constructive possession is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself." *United States v. Cox*, 627 F.3d 1083, 1085 (8th Cir.2010). "Possession may be joint; it need not be exclusive," [*United States v.*] *Smart*, 501 F.3d [862,] 865 [(8th Cir. 2007)], and "may be based on circumstantial evidence which is 'intrinsically as probative as direct evidence.'" *United States v. Bradley*, 473 F.3d 866, 867 (8th Cir. 2007) (quoting *United States v. Patterson*, 886 F.2d 217, 219 (8th Cir.1989) (per curiam)).

*United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011). "[T]he requisite knowledge can be inferred 'from a defendant's presence where contraband is discovered, when combined with other evidence.'" *United States v. Smith*, 508 F.3d 861, 867 (8th Cir. 2007) (quoting *United States v. Stevens*, 439 F.3d 983, 990 (8th Cir. 2006)).

Here, the evidence presented was sufficient for a reasonable jury to conclude that Defendant possessed the firearm. The government presented evidence that the shotgun was found directly behind where Defendant was sitting in the car, the shotgun was mostly visible on the seat of the car and the shotgun was wrapped in Defendant's coat. The court agrees with Defendant that such evidence does not rule out the possibility that someone else may have placed the gun in Defendant's coat. However, the relevant inquiry is whether Defendant exercised dominion or control over the firearm, not whether Defendant

6

placed the firearm in the coat. Moreover, because the jury could have found that Defendant possessed the firearm jointly, the government was not required to show that Defendant was the only person to possess the firearm. Viewing the evidence in the light most favorable to the jury's verdict and according the government the benefit of all reasonable inferences, Defendant's proximity to the shotgun combined with the fact that the shotgun was visible on the seat of the car and it was wrapped in Defendant's coat was sufficient for the jury to find that Defendant possessed the shotgun. *See, e.g.*, *Brown*, 634 F.3d at 439 (holding that evidence was sufficient to support jury verdict that a defendant possessed a firearm when the firearm was found inches from the defendant's feet and the defendant was the only person to have sat in the passenger seat). Accordingly, the court shall deny the Motion to the extent it seeks a judgment of acquittal on Count 1 based on the sufficiency of the evidence.

### 2. *Knowledge that gun had barrel of less than eighteen inches*

Defendant next argues that the government did not present sufficient evidence for the jury to conclude that Defendant knew that the barrel of the shotgun was less than eighteen inches because it was only 0.55 inches less than eighteen inches.

"Although [26 U.S.C. § 5861(d)] is silent as to the requisite mens rea for illegal possession, [the Eighth Circuit Court of Appeals has] concluded that the only knowledge required to support a conviction . . . is knowledge that the weapon is 'a firearm' as that term is *generally* defined." *United States v. Erhart*, 415 F.3d 965, 969 (8th Cir. 2005) (quoting *United States v. Barr*, 32 F.3d 1320, 1323 (8th Cir. 1994)) (internal quotation marks omitted). Moreover, when the "characteristics of the weapon render it 'quasi-suspect,' then the owner of the weapon does not have to know the specific characteristics to violate the Act." *Id.* at 969 (footnote omitted); *see also United States v. Dukes*, 432 F.3d 910, 915 (8th Cir. 2006) ("If the characteristics of the object render it quasi-suspect, the [g]overnment need only prove that the defendant 'knowingly possessed the item.'"

7

(quoting *United States v. Walker*, 428 F.3d 1165, 1171 (8th Cir. 2005))). Whether a weapon is quasi-suspect is determined by a common-sense evaluation, and "a sawed-off shotgun is not a traditionally-lawful weapon" and a defendant has "no legitimate expectation that [a sawed-off shotgun is] not subject to regulation." *Erhart*, 415 F.3d at 969 n.3 (quoting *Barr*, 32 F.3d at 1324) (internal quotation marks omitted); *see also Dukes*, 432 F.3d at 915 (stating that "an object that fits the broad statutory definition of 'firearm' in 26 U.S.C. § 5845 and does not appear to be traditionally lawful, such as a . . . sawed-off shotgun . . . is quasi-suspect").

Here, as already discussed, the jury was reasonable in finding that Defendant possessed a sawed-off shotgun. A sawed-off shotgun is a quasi-suspect weapon. Thus, because the government introduced sufficient evidence to show that Defendant knew that the weapon was a firearm, the evidence was sufficient for a jury to reasonably conclude that Defendant knew that the sawed-off shotgun was subject to the Act. *See* Government Exhibit 9D (docket no. 65-6), Government Exhibit 10K (docket no. 65-7). Accordingly, the court shall deny the Motion to the extent it seeks a judgment of acquittal on Count 2 based on Defendant's knowledge that the barrel of the gun was less than eighteen inches in length.

## V.  MOTION FOR NEW TRIAL

### A.  Legal Standard

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *Peters*, 462 F.3d at 957. A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)) (internal

quotation mark omitted). However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). The court's standard of review differs from the standard that is applied to a motion for judgment of acquittal:

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Lincoln*, 630 F.2d at 1319; *see also United States v. Johnson*, 474 F.3d 1044, 1050-51 (8th Cir. 2007) (reiterating applicable standard).

### B. *Analysis*

In his Brief in Support of the Motion, Defendant argues that the court should grant a new trial because: (1) the weight of the evidence is contrary to the jury's verdicts; (2) the government improperly introduced evidence of Defendant's prior firearms conviction;

9

and (3) government witnesses Clay Gilmer and Eric Webster[2] were predictably recalcitrant and provided the government with an unfair benefit.

### 1. *Weight of the evidence*

Defendant appears to argue that the weight of the evidence is contrary to the jury's verdicts.[3] While the government does not specifically address whether the weight of the evidence is contrary to the jury's verdicts, for the same reasons discussed with respect to Defendant's motion for judgment of acquittal, the court finds that the evidence did not "preponderate[] sufficiently heavily against the verdict[s]." *United States v. Malloy*, 614 F.3d 852, 862 (8th Cir. 2010) (quoting *Lincoln*, 630 F.2d at 1319). Based on the evidence supporting the jury's verdicts, the court cannot conclude "that a serious miscarriage of justice may have occurred." *Id.* (quoting *Lincoln*, 630 F.2d at 1319). Accordingly, the court shall deny the Motion to the extent it seeks a new trial based on the weight of the evidence.

### 2. *Prior firearm conviction*

Defendant next contends that because Defendant's "*possession* or lack thereof was the sole issue [at] trial" and Defendant's prior firearms conviction "was only admissible to prove knowledge, intent, or lack of mistake and . . . there was no such issue before the jury . . . admission and use of the past gun charge was, at the very least, inadmissible as

---

[2] Eric Webster refused to testify at trial, and the court held him in civil contempt of court. *See* Order Memorializing Finding of Civil Contempt of Court (docket no. 68). The court is unclear how the absence of a government witness could be grounds for a new trial, and Defendant appears to only argue that Clay Gilmer's testimony is relevant to the Motion. Accordingly, the court addresses this argument only as to Clay Gilmer.

[3] Defendant asserts in a footnote that the sufficiency-of-the-evidence argument set forth in the motion for judgment of acquittal "mitigate[s] in favor of a new trial even if the [c]ourt finds such bases do not merit a judgment of acquittal." Brief in Support of the Motion at 7 n.1. The court construes this footnote to be a weight-of-the-evidence argument.

10

irrelevant and, likely, presented prejudice that far outweighed the non-existent probative value." Brief in Support of the Motion at 9-10. Defendant presented an identical argument in his Resistance to Government's Motion for Ruling Pursuant to Rule 104 (docket no. 56). The court ruled on this argument, and it found that evidence of Defendant's prior firearm conviction was admissible. *See* December 27, 2013 Order (docket no. 63). Nothing Defendant argues in the instant Motion leads the court to reconsider its previous ruling. Contrary to Defendant's assertion, the government was not required to "advanc[e] a claim of mistake/accidental/unintentional possession." Brief in Support of the Motion at 9. Rather, a defendant "place[s] his [or her] knowledge of the firearm's presence . . . at issue by pleading not guilty to the crime and requiring the government to prove his guilt beyond a reasonable doubt." *United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006). Accordingly, the court shall deny the Motion to the extent it seeks a new trial based on the admission of evidence of Defendant's previous firearm conviction.

### 3. *Recalcitrant witness*
#### a. *Parties' arguments*

Finally, Defendant argues that the recalcitrant behavior of government witness Clay Gilmer was predictable, allowed otherwise impermissible questions and effectively precluded Defendant from cross-examining Gilmer. Defendant does not provide any legal authority whatsoever in support of this argument and leaves the court to guess the legal basis for his argument. Moreover, Defendant only generally complains about "impermissible testimony" and "grand jury testimony" and "statements," but fails to alert the court to the content of the allegedly impermissible statements. Upon the court's own review and liberally construing the Motion, it appears that he is arguing that the court, even without any objection, should not have permitted the government to impeach Gilmer with his grand jury testimony under Rules of Evidence 403 and 802. *See* Fed. R. Evid.

403 (stating that a court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice); Fed. R. Evid. 802 (stating that hearsay is generally inadmissible).

The government argues that such testimony was not predictable, and, even if it was predictable, the court properly admitted it for impeachment purposes. The government further contends that Defendant had the opportunity to cross examine Gilmer.

### b. *Applicable law*

As an initial matter, the court agrees with the government that because Defendant did not object to the government's questions of Gilmer at trial, nor did he object to the government's closing argument pertaining to Gilmer's grand jury testimony, the court reviews this matter only for plain error. *See United States v. Amaya*, 731 F.3d 761, 764 (8th Cir. 2013) (stating that "it is appropriate for [the] district court to apply plain error review to a defendant's motion for new trial where issues were not objected to during trial") (citing *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988)); *United States v. Cruz-Padilla*, 227 F.3d 1064, 1069 n.8 (holding that although failure to object to the prosecutor's improper remarks results in plain-error review, "there is no difference between improper remarks which require reversal where an objection to the remarks has been preserved and remarks which constitute plain error" (quoting *United States v. Freisinger*, 937 F.2d 383, 387 (8th Cir. 1991))). To establish plain error, a defendant "must show an obvious error that affected his [or her] substantial rights, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Demery*, 674 F.3d 776, 780 (8th Cir. 2011) (citing *United States v. Olano*, 507 U.S. 725, 736 (1993)). "[A]n error only affects substantial rights if it is prejudicial, *i.e.*, the defendant proves there is 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" *United States v.*

*Goodwin*, 719 F.3d 857, 865 (8th Cir. 2013) (second alteration in original) (quoting *United States v. Vanover*, 630 F.3d 1108, 1119 (8th Cir. 2011)).

Hearsay evidence is normally inadmissible. Fed. R. Evid. 802. Hearsay is "a statement that . . . the declarant does not make while testifying at the current trial . . . and a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A declarant's out-of-court statement may be admissible in certain cases despite the general proscription against hearsay. For example, and relevant here, "when a party offers an out-of-court statement made by a government witness in order to impeach that witness by showing that he had made statements contrary to his trial testimony—and not to establish the truth of his out-of-court statement—the out-of-court statement is not hearsay." *United States v. Yarrington*, 634 F.3d 440, 448 (8th Cir. 2011). Moreover, "[a]ny party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607.

While a party may impeach its own witness under Rule 607, courts "must be watchful that impeachment is not used as a subterfuge to place otherwise inadmissible hearsay before the jury." *United States v. Buffalo*, 358 F.3d 519, 523 (8th Cir. 2004) (quoting *United States v. Logan*, 121 F.3d 1172, 1175 (8th Cir. 1997)) (internal quotation marks omitted). "The danger . . . is that a party will call a witness, knowing him or her to be adverse, merely to make an end-run around the rule against hearsay by impeaching the witness with a prior inconsistent statement that the jury would not otherwise have been allowed to hear." *Id.* at 522-23. Moreover, courts must be concerned under these circumstances "that, despite any limiting instruction, the jury will misuse the inconsistent statement as substantive evidence, rather than consider it only on the issue of a witness's credibility." *Id.* at 523. "Rule 403 serves to prevent a party from calling a witness, knowing [him or] her to be adverse, simply to admit under the guise of impeachment an out-of-court statement that implicates the defendant." *Demery*, 674 F.3d at 780; *see also*

Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). While the formulation of this test often speaks of whether the party calling the adverse witness knows that the witness is adverse, "'the government's motive in eliciting testimony is irrelevant,' and [courts] conduct the Rule 403 analysis on an objective basis." *Demery*, 674 F.3d at 781 (quoting *Logan*, 121 F.3d at 1175). "The probative value of the impeachment evidence in this scenario typically is to raise doubts regarding the truthfulness of *both* the witness's trial testimony and [his or] her out-of-court statement, and thereby to suggest that the witness is not a credible person." *Id*.

### c. Application

#### (i) Grand jury testimony

Gilmer first testified that he did not remember his grand jury testimony. In response, the government handed Gilmer a transcript of his grand jury testimony to refresh his recollection. After reading the transcript, Gilmer maintained that he did not remember his grand jury testimony. The following exchange ensued:

| | |
|---|---|
| Government: | Do you recall . . . being asked a question before the grand jury did you see him with anything—referring to the defendant—coming down to the parking lot? |
| Gilmer: | No. |
| Government: | And do you recall answering yes? |
| Gilmer: | No. |
| Government: | Do you recall being asked what did you see him with? |
| Gilmer: | No. |
| Government: | Do you recall answering he came out the side door with a gun? |
| Gilmer: | No. |

14

| | |
|---|---|
| Government: | Do you recall being asked what type of gun? |
| Gilmer: | No. |
| Government: | And do you recall answering a sawed-off? |
| Gilmer: | No. |
| Government: | And being asked a sawed-off what? |
| Gilmer: | No. |
| Government: | Do you recall answering a shotgun? |
| Gilmer: | No. |

Trial Testimony of Clay Gilmer (docket no. 92) at 6. Additionally, in its closing argument to the jury, the government argued the following:

> You saw how badly Mr. Gilmer did not want to be in this courtroom testifying against his friend. So badly that he wouldn't even admit that he knew his nickname. He wouldn't admit that the defendant had ridden with him in his car to the apartment complex that night or that the defendant had the gun. All of these things that he was impeached with that he had previously testified under oath; that all of those things were true.

Transcript of Day Two of Jury Trial ("Closing Transcript") (docket no. 93) at 12. Following the closing arguments and submission of the case, the jury submitted one question to the court during its deliberations, which was: "Can we use statements made in the grand jury testimony? Those brought out in our trial." Jury Question (docket no. 72) at 2. Defendant did not object to the government's use of Gilmer's grand jury testimony during Gilmer's examination, nor to the government's use of such testimony during its closing argument.

### *(ii)* *Hearsay*

Here, the government called Gilmer as a witness, anticipating that he would testify that Defendant possessed the shotgun.[4] When Gilmer stated at trial that he did not

---

[4] The parties dispute whether the government knew or should have known that
(continued…)

remember the night of August 2, 2013, and did not remember testifying before the grand jury that Defendant possessed the gun, the government impeached Gilmer with his grand jury testimony that included a statement that Defendant possessed the shotgun. Defendant did not object to this impeachment. The government argues that the impeachment was not hearsay because it was not offered for the truth of the matter asserted, but only to impeach Gilmer's testimony that he did not remember the night of August 2, 2013 and did not remember his grand jury testimony. The government is correct that this exchange was not hearsay to the extent the government used Gilmer's grand jury testimony to impeach his statement that he did not remember what he testified to while he was testifying before the grand jury.

### *(iii) Unfair prejudice*

The more difficult question here is whether the jury's exposure to Gilmer's grand jury testimony unfairly prejudiced Defendant pursuant to Rule 403. The government sought to impeach Defendant's testimony that he did not recall his grand jury testimony. The probative value of such impeachment was to show that Defendant was not credible when he testified that he did not remember his grand jury testimony. That is, if the jury used Defendant's grand jury testimony only for its permissible purpose of deciding whether

---

[4](…continued)
Gilmer was not going to testify consistently with his grand jury testimony. Defendant argues that because Gilmer posted on Facebook that he was "never no snitch" on November 30, 2013 and posted on the day of trial that he was on his way to court and hoped he would not "get locked up," the government should have known that he would refuse to testify. *See* Facebook Posts (docket no. 80-2) at 1-2. The government states that, although Gilmer was reluctant to testify, it expected that he would nonetheless testify consistently with his grand jury testimony. While the court agrees with the government that it did not intentionally call Gilmer for the purpose of repeating his grand jury testimony in front of the jury, the government's "motive in eliciting testimony is irrelevant" because the court "conduct[s] the Rule 403 analysis on an objective basis." *Demery*, 674 F.3d at 781 (quoting *Logan*, 121 F.3d at 1175) (internal quotation marks omitted).

Defendant credibly testified that he did not remember his grand jury testimony, the most that the jury could conclude after such impeachment is that the Defendant did remember his grand jury testimony. The court finds that whether Defendant remembered his grand jury testimony—as compared with the content of his grand jury testimony—has little probative value as to any matter at issue in the case. *See United States v. Rogers*, 549 F.2d 490, 496-97 (8th Cir. 1976); *see also* 27 Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 6093 (2d ed.) ("Showing that a witness'[s] testimony has been damaging to the impeaching party's case is simply a precondition to showing that impeaching evidence is relevant. If the witness has not testified to any facts that are of consequence, [his or] her credibility is also not of consequence.").

In contrast, Gilmer's grand jury testimony had a high danger of unfair prejudice to Defendant. The government was able to state to the jury that Gilmer had previously testified that Defendant possessed the shotgun—the sole question the jury was required to ultimately decide at trial. Not only was the government able to use Gilmer's grand jury testimony in its examination of Gilmer, the government explicitly referenced Gilmer's grand jury testimony in its closing argument, and it explicitly argued that Gilmer not only testified before the grand jury that Defendant possessed the weapon, but also that such testimony was true. By arguing that Gilmer's grand jury testimony was the truth in its closing, the government used such testimony in violation of the rule against hearsay. *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence *to prove the truth of the matter asserted in the statement*") (emphasis added). Moreover, the fact that the petit jury's sole question was whether it could consider Gilmer's grand jury testimony suggests that it considered such testimony for its truth. *See Buffalo*, 358 F.3d at 523 (noting that courts are concerned that "the jury will misuse the inconsistent

statement as substantive evidence, rather than consider it only on the issue of a witness's credibility").

Given the absence of probative value of Gilmer's grand jury testimony for permissible purposes and the nature of the government's questions and argument, the court concludes that the probative value of Gilmer's grand jury testimony was "substantially outweighed by a danger of . . . unfair prejudice" to Defendant and, consequently, should not have been allowed. Fed. R. Evid. 403.

### *(iv)  Plain error*

The court further finds that Defendant has established plain error because he has shown that "there is 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" *Goodwin*, 719 F.3d at 865 (alteration in original) (quoting *Vanover*, 630 F.3d at 1119); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009) (stating that to establish plain error, a defendant must ordinarily "demonstrate that [the alleged error] affected the outcome of the district court proceeding") (quoting *Olano*, 507 U.S. at 734) (internal quotation marks omitted). Had Defendant objected to the government's use of Gilmer's grand jury testimony at trial, the court would have had the opportunity to rule on the objection and prevent the government's use of the testimony. If the court nonetheless permitted the government to use the grand jury testimony, the government would have had the burden to show that Defendant was not prejudiced by the government's use of Gilmer's grand jury testimony. However, because Defendant remained silent, "the defendant rather than the [g]overnment . . . bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734.

Despite doing very little in his Motion, Defendant has met this burden. The court finds that "there is a reasonable probability that, but for" the government's improper use of Gilmer's grand jury testimony, "the result of the proceeding would have been different." *Goodwin*, 719 F.3d at 865 (quoting *Vanover*, 630 F.3d at 1119). The court

finds that "the interest of justice" requires a new trial. *See* Fed. R. Crim. P. 33(a). Defendant has shown that it was plain error to allow the government to impeach Gilmer with his grand jury testimony as it did and to allow the government to state in its closing that the jury should consider Gilmer's grand jury testimony for its truth. The court is also troubled at the likelihood the jury used Gilmer's grand jury testimony as a basis for finding Defendant guilty, as evidenced by the jury's sole question to the court during its deliberations. Accordingly, the court shall grant the Motion to the extent it seeks a new trial based on the government's use of Clay Gilmer's grand jury testimony.

## *VI. CONCLUSION*

In light of the foregoing, Defendant Patrelle Jose Green-Bowman's "Motion for Judgment of Acquittal and Motion for New Trial" (docket no. 80) is **GRANTED IN PART** and **DENIED IN PART**. The motion for judgment of acquittal is **DENIED**. The motion for new trial is **GRANTED**. The verdicts are vacated. A new trial in this matter will commence on **May 12, 2014** before the undersigned at the United States Courthouse, 111 7th Avenue SE, Cedar Rapids, Iowa.

**IT IS SO ORDERED.**

**DATED** this 8th day of April, 2014.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA